## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

AMERICAN FOOD & VENDING
CORPORATION,

      Plaintiff,

      v.

THE GOODYEAR TIRE & RUBBER
COMPANY,

      Defendant.

Case No. 24-2108-TC-ADM

## <u>MEMORANDUM AND ORDER</u>

American Food & Vending Corporation ("AFV") brings this action against The Goodyear Tire & Rubber Company ("Goodyear"), asserting that Goodyear breached contracts for food and vending services at two of Goodyear's tire manufacturing facilities. The case is now before the court on AFV's Motion to Compel. (ECF 83.) By way of this motion, AFV asks the court to compel Goodyear to respond to a document request that seeks food and vending service agreements Goodyear entered with third parties. (ECF 83, at 3-4.) For the reasons explained below, the motion is granted in part.

This discovery dispute arises from AFV's Request for Production of Documents No. 14 ("RFP 14"), which seeks, "All documents regarding vending contracts at all Goodyear manufacturing locations or sites since January 1, 2010, to present." (ECF 83-3, at 6.) Goodyear objected to RFP 14 on the grounds that it was overbroad and disproportionate to the needs of the case, among other things. On December 13, 2024, at the parties' request, the court convened a discovery conference on the matter. As discussed in further detail on the record, the parties agreed to further meet and confer in an attempt to reach agreement on a narrowed version of RFP 14, but

failing that, for AFV to bring a motion to compel under a briefing schedule set by the court.  (ECF 81.)  AFV filed the instant motion on its due date, but stated therein that the parties had not yet completed the meet-and-confer process.  (ECF 83, at 1 n.1.)  Accordingly, the court could deny the motion under D. Kan. Rule 37.2.  However, given the late stage of this proceeding—with fact discovery closing on January 24—the court proceeds to craft a practical resolution of this dispute.

The parties raise two main areas of disagreement.  First, the parties disagree about whether Goodyear's food and vending agreements with other third parties are relevant to the claims and defenses in this case.  At the discovery stage, relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227-JWL-TJJ, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) ("[A]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case will be deemed relevant."); *Waters v. Union Pacific R.R. Co.*, No. 15-1287-EFM-KGG, 2016 WL 3405173, at *1 (D. Kan. June 21, 2016) ("Relevance is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action." (internal quotations and citation omitted)).  Here, Goodyear has asserted in its summary judgment briefing that language in a party's contracts with third parties (or, at least, in AFV's contracts with third parties) bears on the party's intent when entering the two contracts at issue in this action.  (ECF 51 ¶ 29 ("[W]hen AFV desires to make termination contingent upon a violation of the agreement or specify that the contract may only be terminated after a specific amount of time, it knows how to do that.").)  In support of Goodyear's argument, it submitted two agreements between AFV and third parties.  (ECF 50-3, 50-4.)  Goodyear states that it intends to

use information about AFV's third-party contracts to explore whether AFV "ever protected itself" in other contracts against certain risks and "if so, why AFV did not take the same precautions here." (ECF 84, at 4 n.4.) In addition, Goodyear submitted a declaration from James W. Prentis, its Sr. Director of Global Indirects, stating, "Goodyear negotiates to include a termination for convenience provision as a matter of course in procurement contracts like the Vending Service Agreements with [AFV], and it was consistent with Goodyear's negotiation practices to negotiate for the termination for convenience provision reflected in Section VI of the Vending Service Agreements" at issue herein. (ECF 49 ¶ 5.) Based on Goodyear's positions regarding the significance of both parties' third-party contracts, the court finds Goodyear's third-party contracts relevant to enable AFV to counter those positions. To be clear, the court, like AFV, questions the relevance of third-party contracts to the substantive contract issues in this action, but the court finds that the positions Goodyear has taken make such contracts at least marginally relevant because they affect AFV's ability to counter such positions.

The second area of dispute is whether RFP 14 is proportional to the needs of the case. As originally written, the RFP seeks all documents from *any* vending contract at *all* Goodyear manufacturing facilities *and* sites over a *14-year* period. It is not disputed that Goodyear maintains more than a thousand sites and facilities around the world, and pulling documents related to 14 years of vending contracts at these sites simply does not make sense given that this case pertains to specific vending contracts entered for two tire manufacturing facilities in the United States. The court therefore finds that this request is clearly disproportional to the needs of the case given the marginal relevance of such contracts.

In attempting to resolve this discovery dispute, however, AFV narrowed its discovery request. AFV now seeks "only food and vending service agreements . . . entered for the period

3

January 1, 2008 through December 31, 2010." (ECF 83, at 3-4.) Goodyear argues this narrowing still does not go far enough because the "burden of identifying and reviewing every vending service agreement from 2008 and 2009, including by pulling hard copy documents from storage for each of those years for every Goodyear location, is simply not proportional to the needs of the case." (ECF 84, at 7-8.) But Goodyear has offered no support for this conclusory statement, and thus has not supported its proportionality objection. *See Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670 (D. Kan. 2004) (ruling that the party resisting discovery does not carry this burden by asserting "conclusory or boilerplate objections that discovery requests are irrelevant, immaterial, unduly burdensome, or overly broad"); *Pflughoeft v. Kansas & Oklahoma R.R., L.L.C.*, No. 22-1177-TC-RES, 2023 WL 5672202, at *13 (D. Kan. Sept. 1, 2023) ("The party resisting discovery on proportionality grounds still bears the burden to support its objections." (internal quotation and citation omitted)).

Nonetheless, the court independently finds that, even as currently narrowed, RFP 14 remains disproportionate to the needs of this case given the sheer number and breadth of the types of Goodyear locations—ranging, for example, from numerous local installation shops to corporate headquarters. Even narrowing these locations to manufacturing facilities like the Topeka and Fayetteville facilities at issue in this case, Goodyear's own public website states that it maintains 55 manufacturing facilities in 22 countries.[1] AFV has not shown that contracts for all such facilities would be even marginally comparable and hence relevant here. Indeed, the court questions the usefulness of contracts negotiated in other countries and subject to different legal and cultural norms. Thus, the court therefore limits the discovery to facilities in the United States.

---

[1] *See* https://corporate.goodyear.com/us/en/company/locations.html (last visited Jan. 6, 2025).

Further, the court questions the similarity of such contracts at other types of manufacturing facilities (*e.g.*, chemicals, airship operations, tire proving grounds, innovation lab, etc.). The court therefore further limits the discovery to *tire* manufacturing facilities like the ones involved in this case[2] given the minimal relevance of third-party contracts and the late stage of discovery. The court finds that such narrowing advances Federal Rule of Civil Procedure 1's mandate to effectuate the just, speedy, and inexpensive resolution of this action. As such, the court orders Goodyear to produce the following: **All food and vending service agreements that Goodyear entered with third parties in the years 2008, 2009, and 2010, for service at its United States tire manufacturing facilities.** Goodyear must produce such agreements by **January 21, 2025**.

IT IS SO ORDERED.

Dated January 7, 2025, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge

---

[2] Goodyear's website reflects that it currently has eight tire manufacturing facilities in the United States (Akron, Ohio; Danville, Virginia; Findlay, Ohio; Fayetteville, North Carolina; Topeka, Kansas; Lawton, Oklahoma; Texarkana, Arkansas; and Tupelo, Mississippi). *See* https://corporate.goodyear.com/us/en/company/locations.html (last visited Jan. 6, 2025). Goodyear can surely come up with a similar list of tire manufacturing facilities that it maintained in the United States during the years 2008-2010.